Off we go, Gamache. Mr. Smith. Thank you, Your Honor, for pleasing the court. Steve Smith from Limited Cades in Augusta, Maine, for Mr. Gamache. Your Honor, this case is really about the use of a court order to compel the production of incriminating evidence. This is an unusual set of circumstances. The court will forgive my voice. This is an unusual set of circumstances where Mr. Gamache, who is subject to an ex parte order, which the police were serving upon him, complied with the order on its face. That order suggested to him, stated to him, that if he did not turn over his firearms, he would be subject to contempt and to criminal sanction. Well, Mr. Smith, let me make sure I have a few facts correctly in mind. When the officers arrived at Mr. Gamache's door to serve these state court orders, he invited them in. So their entry into his premises was by consent. Is that correct? I would suggest to the court that it was after he was spoken to outside of his premises. Yeah, but they invited him in. There was nothing about the court orders that compelled him to allow them to enter. That was something he did voluntarily. Your Honor, I respectfully disagree. That is a symptom of what happened. When he's faced with a court order that says, thou shalt turn over your guns, what he then does is turn over his guns. No, no, no, but you're jumping ahead. The officers arrive at his door. They have a court order. The first thing that happens, as I understand it, is that he invites them to come in. Now, did they stand out in the hall and discuss what the court orders said, and then he invited them in? Is that what the facts show?  Well, my reading of the record is that Gamache opened the door of his apartment and motioned the officers to enter. Yeah, that's correct. And let's assume that the record says that. I'm sure your Honors are correct. Yeah. What then occurs is... They see the shotgun. Well, he points to the guns. But that's all right, but their veer and the shotguns are in plain view. Whether the guns are in plain view or not, Your Honor. All right, well, wait a minute. Before we argue the significance of the fact, let's establish the fact. The guns are in plain view once the officers, by his invitation, enter the apartment. They're in plain view. They're hanging on the wall. Mr. Gamache points to them. All right, they're hanging on the wall. The officers at that point have a court order that says they have to retrieve any guns. They have to turn over any guns that are in your possession. So regardless of anything else, why aren't the officers at that point entitled to seize the guns? Your Honor, I think the court, with all due respect, sort of makes an assumption. What's the assumption? The assumption is that the officers did notice the guns. It doesn't matter whether they noticed them. What matters is that they're in plain view. Once he invites them in, they're in plain view. And the law is that if they're in plain view, the officers can take them, assuming they're in possession of an order that makes the continued possession of those guns by the defendant a criminal offense. And that order did. It was a Class D misdemeanor under Maine law. Your Honor, I think the issue I take with the court's assessment is that once they tell him about the court order and the guns are hanging on the wall and he points to the guns, there's no independent record that the police officers say, oh, I saw the guns in their plain view. That is simply the court's assumption. Well, they don't have to say that as long as they are in plain view. I mean, your theory seems to be that a defendant can defeat the plain view doctrine by, as soon as the police come into his premises, immediately pointing to anything that he thinks is incriminating because once he points it out, then they can no longer use the plain view doctrine. And, you know, that's just not held by any court that I know of. Your Honor, I simply think it's an assumption that guns hanging on the wall are in plain view. We don't have any other record except that they're hanging on the wall. And then Mr. Gamache pointed to them. They could have been covered by drapes. The record is simply silent. But the record is that when he pointed to them, the officers saw them, so they had to be in plain view. If they were covered by drapes, the fact that he pointed to them, they still would have been obscured. The magistrate judge who made the evidentiary findings here found that in response to Officer Scripture's question, the defendant, Gamache, pointed to his living room wall where two shotguns were displayed in plain view. Even if Gamache had not pointed to the weapons, Scripture would have inevitably seen them from his vantage point. They didn't search the apartment. They went, took down the two firearms that were up on the wall, one of which was a sawed-off shotgun, which your client had sawed off himself, and he knew it was below the legal length of a shotgun. Aren't all of those facts true? Your Honor, I simply think it's an assumption that the officers would have seen that, that it would have been found. There's simply no record of that, I think. There are assumptions. You had a chance to convince the magistrate judge of different fact findings. We have the fact findings we have. We have no basis to say they're clearly erroneous. And as Judge Selye has pointed out, once there is consent and the officers have entered the apartment with consent and these things are in plain view, one would not reach your Fifth Amendment arguments, which are very interesting, but we simply wouldn't reach them. Well, Your Honor, I think if one examines the record, it's only after the police officers tell them about the court order. They might be inside the residence, but it's only after that the police officers tell Mr. Gamache of the court order that he then points to the wall. But that doesn't matter. What matters is that the shotguns are in plain view, and you've got a fact finding that's against you on that point. Well, Your Honor, I think the fact finding that's relevant here, with all due respect, is that the police officers told him about the court order, and the penalties contained in that court order if he didn't comply. And when he then points to the wall, maybe they would have seen him, maybe they wouldn't have. But that situation so irretrievably taints the government's evidence that we would suggest to the court that it simply must be suppressed. Thank you, counsel. Thank you. I'm Margaret McGoy for the United States. If I might start out by pointing out that the facts have never been in dispute. Would you mind pointing your, yeah, thank you. The facts have never been in dispute in this case. The government submitted a proposed set of facts, affidavits, from the two searching officers, the protection from abuse orders. The defendant never produced any affidavits of his own. The magistrate judge found the facts based on the defendant's failure to dispute any of them. And as the court itself has quoted from those undisputed facts, it was undisputed that when the officers presented themselves at the defendant's apartment that he motioned them to enter. That's consent. It was undisputed that when the officers explained that the defendant had an obligation to turn over any firearms, the defendant pointed to the wall where the two shotguns were hanging, as Judge Celia points out, in plain view. Under those circumstances, the officers had every right to seize the firearms. And that's the end of the story. If the court would like me to address the Fifth Amendment, Hobson's choice the defendant has raised, I'd be happy to do that. But on the facts of this case, in the government's view, that's not necessary. I have no questions. Then the government would urge the court to affirm. Thank you.